## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
### (Northern Division)

STEPHEN BUSHANSKY
2575 Palisade Ave. #6L                          *
Riverdale, New York 10463
Individually and on behalf of a class           *
of shareholders similarly situated,
                                                *
     Plaintiff
                                                *
  vs.                                           Civil Action No. _____
                                                *
HATTERAS FINANCIAL CORP.
751 W. Fourth Street                            *
Suite 400
Winston Salem, North Carolina 27101             *

      SERVE ON:                            *
      Paracorp Incorporated
      245 West Chase Street                *
      Baltimore, Maryland 21201,
                                                *
DAVID W. BERSON
c/o Hatteras Financial Corp.                    *
751 W. Fourth Street
Suite 400                                       *
Winston Salem, North Carolina 27101
                                                *
      SERVE ON:
      Hatteras Financial Corp.             *
      751 W. Fourth Street
      Suite 400                            *
      Winston Salem, North Carolina 27101,
                                                *
BENJAMIN M. HOUGH
c/o Hatteras Financial Corp.                    *
751 W. Fourth Street
Suite 400                                       *
Winston Salem, North Carolina 27101
                                                *
      SERVE ON:

Hatteras Financial Corp.                              *
751 W. Fourth Street
Suite 400                                            *
Winston Salem, North Carolina 27101,
                                                     *
MICHAEL R. HOUGH
c/o Hatteras Financial Corp.                         *
751 W. Fourth Street
Suite 400                                            *
Winston Salem, North Carolina 27101
                                                     *
    SERVE ON:
    Hatteras Financial Corp.                    *
    751 W. Fourth Street
    Suite 400                                   *
    Winston Salem, North Carolina 27101,
                                                     *
IRA G. KAWALLER
c/o Hatteras Financial Corp.                         *
751 W. Fourth Street
Suite 400                                            *
Winston Salem, North Carolina 27101
                                                     *
    SERVE ON:
    Hatteras Financial Corp.                    *
    751 W. Fourth Street
    Suite 400                                   *
    Winston Salem, North Carolina 27101,
                                                     *
VICKI MCELREATH
c/o Hatteras Financial Corp.                         *
751 W. Fourth Street
Suite 400                                            *
Winston Salem, North Carolina 27101
                                                     *
    SERVE ON:
    Hatteras Financial Corp.                    *
    751 W. Fourth Street
    Suite 400                                   *
    Winston Salem, North Carolina 27101,
                                                     *
JEFFREY D. MILLER
c/o Hatteras Financial Corp.                         *
751 W. Fourth Street

Suite 400                                          *
Winston Salem, North Carolina 27101
                                                   *

    SERVE ON:
    Hatteras Financial Corp.               *
    751 W. Fourth Street
    Suite 400                              *
    Winston Salem, North Carolina 27101,
                                                   *

WILLIAM V. NUTT, JR.                               *
c/o Hatteras Financial Corp.
751 W. Fourth Street
Suite 400                                          *
Winston Salem, North Carolina 27101
                                                   *

    SERVE ON:
    Hatteras Financial Corp.               *
    751 W. Fourth Street
    Suite 400                              *
    Winston Salem, North Carolina 27101,
                                                   *

THOMAS D. WREN                                     *
c/o Hatteras Financial Corp.
751 W. Fourth Street
Suite 400                                          *
Winston Salem, North Carolina 27101
                                                   *

    SERVE ON:
    Hatteras Financial Corp.               *
    751 W. Fourth Street
    Suite 400                              *
    Winston Salem, North Carolina 27101,
                                                   *

ANNALY CAPITAL MANAGEMENT, INC.
1121 Avenue of the Americas                        *
New York, New York 10036
                                                   *

    SERVE ON:
    National Registered Agents, Inc. of Maryland
    351 W. Camden Street                   *
    Baltimore, Maryland 21201,
                                                   *

    and
                                                   *

3

RIDGEBACK MERGER SUB                    *
CORPORATION
1121 Avenue of the Americas             *
New York, New York 10036
                                        *

    SERVE ON:
    National Registered Agents, Inc. of Maryland
    351 W. Camden Street                 *
    Baltimore, Maryland 21201,
                                        *

       Defendants.
                                        *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This is a class action brought on behalf of the public shareholders of Hatteras Financial Corp. ("Hatteras" or the "Company") against Hatteras and its Board of Directors (the "Board" or the "Individual Defendants"), to enjoin the proposed transaction, pursuant to which Hatteras will be acquired by Annaly Capital Management, Inc. ("Annaly" or "Parent") and Ridgeback Merger Sub Corporation ("Merger Sub") (the "Proposed Transaction").

2.      Hatteras is a real estate investment trust ("REIT") that owns and manages a portfolio of residential mortgage investments, primarily in residential mortgage securities, with a focus on adjustable-rate single-family residential mortgage pass-through securities guaranteed by a U.S. government agency or issued by a U.S. government-sponsored agency. The Company began operations

in November 2007 and is externally managed and advised by its manager, Atlantic Capital Advisors LLC ("Atlantic Capital").

3.      On April 11, 2016, Hatteras and Annaly issued a joint press release announcing their entry into an Agreement and Plan of Merger dated April 10, 2016 (the "Merger Agreement") to sell Hatteras to Annaly. Subject to the terms of the Merger Agreement, Merger Sub will commence a tender offer (the "Offer") to purchase all of the outstanding shares of Hatteras common stock in a transaction with an aggregate value of approximately $1.5 billion. Under the terms of the Merger Agreement, Hatteras shareholders can elect to receive either: (i) $15.85 in cash (the "Cash Consideration"); (ii) 1.5226 shares of Parent stock (the "Stock Consideration"); or (iii) $5.55 in cash and 0.9894 shares of Parent stock (the "Mixed Consideration"), for each outstanding share of Hatteras they own (the "Offer Price"), subject to proration to ensure that the total consideration paid to shareholders will consist of approximately 65% stock and 35% cash. On May 5, 2016, Merger Sub commenced the Offer and the Company filed its Recommendation Statement on Form SC 14D9 (the "Recommendation Statement") with the U.S. Securities and Exchange Commission ("SEC") in which the Board recommended that the Company's shareholders accept the Offer and tender all of their shares pursuant to the Offer.

4.      The Recommendation Statement omits or misrepresents material information concerning, among other things: (i) the valuation analyses prepared by the Company's financial advisor, Goldman, Sachs & Co. ("Goldman"), in connection with the rendering of its fairness opinion; (ii) Hatteras management's projections and Annaly's projections, utilized by Goldman in its financial analyses; and (iii) material information concerning the sale process leading up to the Proposed Transaction. The failure to adequately disclose such material information constitutes a violation of Sections 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), as shareholders need such

5

information in order to make a fully-informed decision regarding whether to tender their shares in connection with the Proposed Transaction.

5.      Importantly, the Recommendation Statement raises significant questions about the fairness opinion provided by the Company's financial advisor, Goldman Sachs.  For example, in its *Selected Companies Analysis*, at least half of the companies Goldman selected are not comparable to Hatteras as they invest in a completely different asset type and have lower financial multiples than the companies truly comparable to Hatteras.  By utilizing these non-comparable companies with lower financial multiples in its analysis , Goldman was able to depress the implied per share values resulting from the analysis and make the insufficient Offer Price look favorable to Hatteras shareholders.  As further discussed below, had Goldman utilized truly comparable companies and applied an appropriate transaction premium, its *Selected Companies Analysis* would have resulted in an implied per share range of approximately $17.28 to $18.35 – significantly above the $15.85 Offer Price.  Moreover, Goldman utilized a questionably high discount rate range and a depressed range of implied terminal multiples in its discounted dividend cash flow analyses of Hatteras and the combined company that had the result of lowering the implied per share range of values, again making the insufficient Offer Price appear favorable to Hatteras shareholders.  Making matters worse, the Recommendation Statement fails to provide key projection line items for both Hatteras and Annaly, including dividends and book value per share – critical inputs to Goldman's discounted dividend cash flow analyses.

6.      As further discussed below, defendants' failure to disclose material information is critical in light of the inadequate Offer Price.  The inadequacy of the Offer Price is further evidenced by the fact that: (i) as recently as March 22, 2016, an analyst at RBC Capital Markets set a $20.00 per share price target for the Company, which is $4.15 above the $15.85 implied value of the Offer Price touted in the

joint press release; (ii) the implied value of the Offer Price is a significant discount to Hatteras stock's 52-week trading high of $16.62 per share; and (iii) the nature of the Company's business offers it protection in the rising interest rate environment as the interest rates payable on adjustable-rate mortgages ("ARMs") will subsequently reset as rates increase.

7. In short, the Proposed Transaction is designed to unlawfully divest Hatteras' public shareholders of the Company's valuable assets without fully disclosing all material information concerning the Proposed Transaction to Company shareholders. To remedy defendants' Exchange Act violations, Plaintiff seeks to enjoin the Proposed Transaction unless and until such problems are remedied.

## JURISDICTION AND VENUE

8. The claims asserted herein arise under Sections 14(e) and 20(a) of the Exchange Act, 15 U.S.C. §78n. The Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

9. This Court has personal jurisdiction over each defendant because the defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

10. Venue is proper in this District pursuant to Section 27 of the Exchange Act as well as 28 U.S.C. § 1391, because Hatteras is incorporated in and each defendant transacted business in this District.

## PARTIES

11.     Plaintiff Stephen Bushansky is, and has been at all times relevant hereto, a continuous shareholder of Hatteras.

12.     Defendant Hatteras is a corporation organized under the laws of the State of Maryland with its corporate headquarters located at 751 West Fourth Street, Suite 400, Winston-Salem, North Carolina 27101.  The Company is a REIT that owns and manages a portfolio of residential mortgage investments.  Hatteras stock trades on the New York Stock Exchange under the ticker symbol "HTS."

13.     Defendant David W. Berson ("Berson") has been a director of the Company since 2007. Defendant Berson is Chair of the Finance Committee, and is a member of the Audit Committee and the Compensation Committee.

14.     Defendant Benjamin M. Hough ("B. Hough") has been President, Chief Operating Officer ("COO") and a director of the Company since 2007.

15.     Defendant Michael R. Hough ("M. Hough") has been Chairman, Chief Executive Officer ("CEO") and a director of the Company since 2007.

16.     Defendant Ira G. Kawaller ("Kawaller") has been a director of the Company since 2007. Defendant Kawaller is a member of the Compensation Committee, the Finance Committee and the Governance Committee.

17.     Defendant Vicki McElreath ("McElreath") has been a director of the Company since 2014.  Defendant McElreath is a member of the Audit Committee.

18.     Defendant Jeffrey D. Miller ("Miller") has been a director of the Company since 2007. Defendant Miller is Chair of the Governance Committee, and is a member of the Audit Committee and the Compensation Committee.

19.     Defendant William V. Nutt, Jr. ("Nutt") has been a director of the Company since 2015. Defendant Nutt is a member of the Compensation Committee, the Finance Committee and the Governance Committee.

20.     Defendant Thomas D. Wren ("Wren") has been a director of the Company since 2007. Defendant Wren is Chair of the Audit Committee and is a member of the Finance Committee.

21.     Defendants identified in paragraphs 13 through 20, *supra*, are referred to herein as the "Individual Defendants."

22.     Defendant Annaly is a corporation organized under the laws of the State of Maryland with its corporate headquarters located at 1211 Avenue of the Americas, Suite 2902, New York, New York 10036.  Parent is a REIT that owns and manages assets and funds on behalf of institutional and individual investors worldwide.  Parent manages a portfolio of mortgage backed securities, including mortgage pass through certificates, collateralized mortgage obligations and other securities.  Parent stock trades on the New York Stock Exchange under the ticker symbol "NLY."

23.     Defendant Merger Sub is a Maryland corporation and a wholly-owned subsidiary of Parent.

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Hatteras common stock (the "Class"). Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

25.     Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

26.     The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.  As of May 3, 2016, there were approximately 94,529,206 shares of Company common stock issued and outstanding.  All members of the Class may be identified from records maintained by Hatteras or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

27.     Questions of law and fact are common to the Class, including, among others, whether the Recommendation Statement is materially false and misleading.

28.     Plaintiff's claims are typical of the claims of the other members of the Class.  Plaintiff and the other members of the Class have sustained damages as a result of defendants' wrongful conduct as alleged.

29.     Plaintiff will fairly and adequately protect the interests of the Class, and have no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.  Plaintiff has retained competent counsel experienced in litigation of this nature.

30.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

31.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### Company Background

32.     Hatteras is an externally-managed REIT that owns and manages a portfolio of residential mortgage investments, primarily in residential mortgage securities, with a focus on those secured by ARM loans on single-family residences.  The Company began operations in November 2007 and is externally managed and advised by its manager, Atlantic Capital.

33.     Hatteras' investment strategy focuses on agency securities, which primarily consist of whole-pool, pass-through certificates that are backed by ARMs, and hybrid ARMs that have principal and interest payments guaranteed by a U.S. government agency, such as the Government National Mortgage Association ("Ginnie Mae"), or issued by a U.S. government-sponsored agency, such as the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac").  While most REITs own and manage real estate, the Company owns and manages mortgage assets rather than specific properties.

34.     Despite a challenging interest rate environment, with its increasingly improving financial results, Hatteras is poised to deliver long-term shareholder growth.

35.     On June 24, 2015, Hatteras announced that it entered into a definitive purchase agreement to acquire Pingora Asset Management, LLC ("Pingora Management") and Pingora Loan Servicing, LLC ("Pingora Servicing" and together with Pingora Management, "Pingora"), a specialized asset manager focused on investing in new production performing mortgage servicing rights and servicing residential mortgage loans.

36.     Commenting on the Pingora acquisition, defendant M. Hough stated:

Pingora's focus on developing strategic partnerships with mortgage originators and purchasing flow-based primary market MSRs directly from them is a natural fit with

Hatteras and our current agency securities and jumbo ARM flow business. We expect Pingora's partnerships will help grow our existing direct mortgage purchase program to a more meaningful scale.

The addition of Pingora will broaden our current strategy and better prepare Hatteras to evolve with the ever-changing mortgage landscape. MSRs should enhance our commitment to conservative asset/liability management and further improve the risk profile of our balance sheet by providing an income generating asset inversely correlated with interest rates to our mortgage-backed assets. Overall, we expect the addition of well-managed MSRs to enhance the risk-adjusted returns we provide shareholders and to create more stable total returns through changing interest rate cycles.

37.     Underscoring the Company's potential for future growth, in a press release dated July 21, 2015, the Company announced its financial results for the second quarter of 2015.  For the second quarter, Hatteras reported a comprehensive income (loss) available to common shareholders of $(48.6) million, or $(0.50) per weighted-average common share, as compared to $48.7 million, or $0.50 per weighted-average common share in the prior quarter.  Net interest margin for the second quarter was $53.9 million, compared to $59.8 million in the prior quarter.  The Company's weighted-average earning assets were $21.0 billion for the second quarter, compared to $21.1 billion in the prior quarter.

38.     Commenting on the results, defendant M. Hough stated:

The second quarter was eventful with increased volatility in the bond markets and our move to enhance the Hatteras platform through the acquisition of Pingora. Much of the market volatility again happened near the end of the quarter with a move higher in interest rates and wider in volatility pricing. As various forces heightened uncertainty and curve movement, the portfolio continued to perform as expected, and we believe is appropriately positioned for the current market environment.

Hatteras is now in position to act on the vision we have described over previous quarters and to begin to move more aggressively toward a more diversified and effective balance sheet. We believe the prime jumbo loan platform we have been developing is now scalable and the acquisition of Pingora will facilitate the addition of well-priced, well-managed mortgage serving rights into our asset mix. The combination of our existing flow partners and Pingora's expanded roster of relationships should enable our existing agency and jumbo ARM flow business to grow meaningfully. We are excited about the opportunities in front of us and are bullish in our ability to enhance risk-adjusted returns for our shareholders.

39.     In a October 27, 2015 press release announcing its financial results for the third quarter of 2015, Hatteras reported a comprehensive income (loss) available to common shareholders of $(84.9) million, or $(0.88) per weighted-average common share, as compared to $(48.6) million, or $(0.50) per weighted-average common share in the prior quarter.   Net interest margin for the third quarter was $51.7 million, compared to $53.9 million in the prior quarter.   The Company's weighted-average earning assets, consisting of residential mortgage assets were $19.9 billion for the third quarter, compared to $21.0 billion in the prior quarter.

40.     Commenting on the third quarter financial results, defendant M. Hough stated:

In the third quarter, the market was surprised by expectations for an increase in short term rates that failed to materialize. Even though we have been positioned for higher short-term rates for some time now, performance in the quarter may have been negatively impacted by the market's reaction to the Fed's decision and concerns around slowing global economic growth. The resulting market volatility contributed to an unusual dislocation of the normally inverse relationship between our assets and our hedges which meaningfully impacted book value. Our expectation is that these conditions could persist for the near term but could begin to normalize as clarity on both domestic and global economies improve.

41.     On February 16, 2016, the Company announced its financial results for the fourth quarter of 2015 and full year ended December 31, 2015.   For the fourth quarter, Hatteras reported a comprehensive income (loss) available to common shareholders of $7.4 million, or $0.08 per weighted-average common share, as compared to $(84.9) million, or $(0.88) per weighted-average common share in the prior quarter.   Net interest margin for the quarter improved to $56.1 million, compared to $51.7 million in the prior quarter.   For the full year, the Company reported a comprehensive income (loss) of $(77.4) million or $(0.80) per weighted-average common share.

42.     Commenting on the quarterly and year-end financial results, defendant M. Hough stated:

While 2015 was a challenging year, the introduction of mortgage servicing rights and mortgage credit to our portfolio will enhance our ability to manage risk more comprehensively and to position the business going forward. Combined with share repurchases, we expect these new revenue sources to diversify our portfolio, lessen our exposure to interest rate and basis risk and create long-term shareholder value.

**The Proposed Transaction**

43.     On April 11, 2016, Hatteras and Annaly issued a joint press release announcing the

Proposed Transaction. The joint press release stated, in relevant part, as follows:

> NEW YORK & WINSTON-SALEM, N.C.--Annaly Capital Management, Inc. ("Annaly") (NYSE:NLY) and Hatteras Financial Corp. ("Hatteras") (NYSE:HTS) today announced the signing of a definitive merger agreement under which Annaly will acquire Hatteras for consideration to be paid in cash and shares of Annaly common stock, which values Hatteras at $15.85 per share of Hatteras common stock based upon the closing price of Annaly common stock on April 8, 2016. The value of the consideration represents a premium of approximately 24% to the 60-day volume-weighted average price of Hatteras common stock ending on April 8, 2016 and a multiple of 0.85x Hatteras' estimated book value per share as of February 29, 2016.
>
> Subject to the terms and conditions of the merger agreement, a wholly-owned subsidiary of Annaly will commence an exchange offer to acquire all outstanding shares of Hatteras common stock. For each share of Hatteras common stock validly tendered in the exchange offer or converted pursuant to the second-step merger described below, Hatteras shareholders may elect to receive: (a) $5.55 in cash and 0.9894 shares of Annaly common stock; (b) $15.85 in cash (the "Cash Consideration Option"); or (c) 1.5226 shares of Annaly common stock (the "Stock Consideration Option"). Hatteras shareholders who elect the Cash Consideration Option or Stock Consideration Option will be subject to proration, in each of the exchange offer and the subsequent second step merger, so that the aggregate consideration will consist of approximately 65% of Annaly's common stock and approximately 35% in cash. In addition to the above consideration, Annaly would assume the existing notional $287.5 million in Hatteras 7.625% Series A cumulative redeemable preferred stock.
>
> The transactions contemplated by the merger agreement, including the exchange offer and the merger, have been unanimously approved by the Board of Directors of Annaly and unanimously approved by the Board of Directors of Hatteras upon the unanimous recommendation of the Special Committee of the Hatteras Board of Directors, which is comprised entirely of independent directors (the "Hatteras Special Committee").

* * *

In connection with the transaction, Annaly entered into 30-month consulting agreements with four members of Hatteras' executive team, including Michael R. Hough and Benjamin M. Hough.

The exchange offer is subject to customary closing conditions, including the tender for exchange of one share more than two-thirds (66 2/3%) of all then outstanding shares of Hatteras common stock when added to any shares of Hatteras common shares owned by Annaly and its wholly-owned subsidiary. Following completion of the exchange offer, the parties will promptly effect a second-step merger without the approval of Hatteras shareholders under Maryland law pursuant to which all remaining shares of Hatteras common stock not tendered in the exchange offer will be converted into the right to receive the same consideration as in the exchange offer, with the same election options and subject to the same proration rules. The transaction is expected to close by the end of the third quarter of 2016.

**The Inadequate Offer Price**

44.     Despite the Company's history and track record of positive financial results, Annaly is attempting to take advantage of a temporary decline in Hatteras' financial performance, due to volatility in the interest rate markets, to acquire Hatteras at a discount to its true value.

45.     Given the Company's track record, the expectation that the current interest rate conditions could begin to normalize and the expected benefits from the Pingora acquisition, the Offer Price is inadequate and significantly undervalues the Company. Annaly is seeking to acquire the Company at a time when the long-term prospects of Hatteras are increasing, and while its stock price is undervalued. For example, as recently as March 22, 2016, analyst Jason Arnold at RBC Capital Markets set a $20.00 target price for Hatteras, which is $4.15 above the $15.85 implied value of the Offer Price touted in the joint press release. Moreover, the implied value of the Offer Price is a significant discount to Hatteras stock's 52-week trading high of $16.62 per share. Additionally, the Company's stock traded above the Offer Price as recently as October 26, 2015, when it reached $15.87 per share.

46.     Importantly, Hatteras is well equipped for the rising interest rate environment. The

Company's focus on ARMs will offer it some protection when interest rates rise as the interest rate payable on the ARMs will subsequently reset.  A June 26, 2015 *Seeking Alpha* article entitled "If Interest Rate Risk Avoidance Is Your Thing, Then Hatteras Is The Stock Of Choice For You" expanded on why Hatteras is geared to perform well in a rising-rate environment.  The article stated, in pertinent part:

**Why an Interest Rate Rise is Not a Concern for Hatteras?**

The Fed has recently reported that the economy is strong enough to support an interest rise by the end of this year. However, I believe it is not a big concern for HTS, even though it is an RMBS company. There are two primary reasons behind this viewpoint. Firstly, I believe this statement has an underlying assumption that the labor market will continue to significantly improve in upcoming months as well. . . .

Secondly, almost two-thirds of the portfolio is allocated to short-term ARMs. All these ARMs have a reset period of less than 84 months and almost 85% of the ARMs have a resetting period of less than 60 months. So any volatility in interest rates will not be a big concern for the company. It also uses forwards and interest rate swaps to hedge its portfolio against interest rate volatility.

**Strategic Initiatives**

The company has recently announced that it will be acquiring Pingora Asset Management and Pingora Loan Servicing. These companies specialize in investing and new production of MSR. So far the company has not disclosed the terms of the acquisition, but this deal is expected to close in the third quarter of the current year. It would be beneficial for the company, as MSR assets are high yield assets in comparison to ARM. The return is further maximized because MSR assets perform well in the rising interest rate scenario as the duration of the loan increases and more servicing income could be earned. So it can be utilized in combination with forwards and swaps as a hedging instrument. The company has highlighted that it will invest $25-$50million in MSR per month.

In the last quarter, the MBS portfolio was up by 1% and reached a total of $21.4 billion. The primary increase was in 15-year TBA securities, as it was up by 26.8% and reached a total of $4.5 billion last quarter. This will help support the company's net interest spread as the weighted average coupon of the TBA portfolio is 8bps higher than ARM securities, as shown in the table below. The company continues to make progress in its jumbo ARM portfolio and the management has pointed out that it will continue to increase its jumbo ARM portfolio in future as well. It highlighted that it will add $10-15 million per month and eventually double the size of the portfolio in future. In the last quarter, HTS added

$92 million in the portfolio and reached a total of $123 million. I believe these investments will be accretive to its core EPS, as the yield of jumbo ARM is generally higher than other ARMs. The weighted average interest rate of these securities was 3.41%. Secondly, its exposure to interest rates is low, which could be beneficial when the Fed decides to raise interest rates in future.

47.     In addition, the Proposed Transaction fails to adequately compensate Hatteras' shareholders for the significant benefits that Annaly will receive from the merger.  In the April 11, 2016 joint press release Kevin Keyes, Annaly's President and CEO stated:

> This strategic transaction represents a unique and sizeable ***value creation opportunity*** for our shareholders. With the acquisition of Hatteras, we ***significantly grow our diversified portfolio and broaden our investment options***, further fortifying Annaly's position as the market leading mortgage REIT.

Emphasis added.

48.     Annaly further noted the benefits it expects to receive from the Proposed Transaction in a presentation filed with the SEC on April 11, 2016, as seen in the following slide:

## Transaction Highlights for Annaly Shareholders

**Transaction creates significant value for Annaly shareholders**

**Industry Leader**
- PF capitalization represents over 20% of the entire mREIT industry

**Strong Liquidity Position**
- Enhanced capital base supports continued growth of all investment businesses

**Positive Financial Impact**
- Accretive to Core Earnings and Book Value
- Estimated Cash-on-Cash returns of ~10-11%

**Operating Efficiencies**
- Scalable operating model creates cost efficiencies from which shareholders will benefit

**Benefits of Diversification**
- HTS floating ARMs portfolio complements NLY's primarily fixed rate portfolio

**Uniquely Positioned**
- Annaly is ideally positioned to capitalize on additional strategic acquisitions

**Significant Funding Advantage**
- Annaly has access to a variety of funding alternatives, including FHLB of Des Moines and its wholly owned broker dealer, RCap Securities

**Track Record of Performance**
- Annaly has outperformed peers and other yield focused investments amidst heightened market volatility

4

49.     In an April 13, 2016 *Market Realist* article entitled "Biggest Mortgage REIT Deal Ever: Annaly Capital Is Buying Hatteras," author Brent Nyitray expanded on the benefits to Annaly from the merger and the sale process. The article stated:

> The companies anticipate that the transaction will be immediately accretive on a book value and earnings per share basis. However, synergies aren't the driving factor. Mortgage REIT strategies are becoming more illiquid and financing costs are rising. This deal provides a way for Annaly to get MBS at an attractive valuation. Hatteras shareholders will receive stock in a more liquid company. They do anticipate about $20 million per year in cost synergies as redundant functions like investor relations and HR are rationalized.

> \* \* \*

> The companies said that the negotiations were an exclusive process. This implies that there wasn't a formal auction for Hatteras.

18

**The Materially Incomplete and Misleading Recommendation Statement**

50.    On May 5, 2016, Hatteras filed the Recommendation Statement with the SEC in connection with the Proposed Transaction.  As alleged below, the Recommendation Statement omits material information that must be disclosed to Hatteras' shareholders to enable them to render an informed decision with respect to the Proposed Transaction.

51.    Specifically, as set forth below, the Recommendation Statement fails to provide Company shareholders with material information or provides them with materially misleading information concerning: (i) the valuation analyses prepared by Goldman in connection with the rendering of its fairness opinion; (ii) Hatteras management's projections and Annaly projections, utilized by Goldman in its financial analyses; and (iii) material information concerning the sale process leading up to the Proposed Transaction.  Accordingly, Hatteras shareholders are being asked to tender their shares without all material information at their disposal.

52.    The Recommendation Statement contains a written fairness opinion provided by Goldman, and describes the various valuation analyses the financial advisor performed in support of its opinion.  However, the description of Goldman's opinion and analyses fails to include key inputs and assumptions underlying the analyses.  Without this information, as described below, Hatteras' public shareholders are unable to fully understand the analyses and, thus, are unable to determine what weight, if any, to place on the fairness opinion rendered in support of the Proposed Transaction.

53.    With respect to Goldman's *Selected Companies Analysis*, the Recommendation Statement fails to disclose: (a) the following individual multiples for each of the selected companies examined by Goldman: (i) Price / Book Value and (ii) Annualized Dividend Yield, as well as any other multiples Goldman examined; and (b) whether Goldman performed any type of benchmarking analysis

for Hatteras in relation to the selected public companies.

54.     The omission of this information renders the following statements in the

Recommendation Statement false and/or materially misleading in contravention of the Exchange Act:

(a)     from pages 30-31 of the Recommendation Statement:

*Selected Companies Analysis*

Goldman Sachs reviewed and compared certain financial information for Hatteras and
Annaly to corresponding financial information, ratios and public market multiples for the
following publicly traded corporations in the residential mortgage REIT industry with a
market capitalization greater than $750 million as of April 8, 2016 (which we collectively
refer to as the selected companies):

- American Capital Agency Corp.
- Two Harbors Investment Corp.
- New Residential Investment
- MFA Financial Inc.
- Chimera Investment Corp.
- Invesco Mortgage Capital Inc.
- CYS Investments
- Redwood Trust Inc.
- PennyMac Mortgage Investment
- Capstead Mortgage Corp.
- Armour Residential REIT

Although none of the selected companies is directly comparable to Hatteras, the
companies included were chosen because they are publicly traded companies with
operations and scale that for purposes of analysis may be considered similar to certain
operations of Hatteras.

Goldman Sachs reviewed and compared various financial multiples and ratios. The
multiples and ratios of Hatteras were based on information regarding shares outstanding
provided by Hatteras' management as of April 7, 2016, Hatteras' SEC filings and
Bloomberg market data as of April 8, 2016. The multiples and ratios of Annaly were
based on information regarding shares of Annaly common stock outstanding provided by
Hatteras' management as of April 3, 2016, Annaly's SEC filings and Bloomberg market
data as of April 8, 2016. The multiples and ratios of the selected companies were based
on SEC filings and Bloomberg market data as of April 8, 2016. With respect to Hatteras
and each of the selected companies, Goldman Sachs calculated:

- price per share as of April 8, 2016 as a multiple of book value per share as of December 31, 2015, which we refer to as "P/BV"; and
- the implied dividend yield by annualizing the dividends paid in the most recent quarter.[1]

The following table presents the results of these analyses:

| | Selected Companies | | Hatteras | Annaly |
| --- | --- | --- | --- | --- |
| | Range | Median | | |
| P/BV | 0.64x – 0.96x | 0.86x | 0.74x | 0.89x |
| Annualized Dividend Yield | 8.8% – 18.2% | 12.8% | 12.6% | 11.5% |

[1]   American Capital Agency Corp. and Armour Residential REIT pay dividends monthly; dividends in the most recent quarter were calculated based on dividends per share over the course of the quarter.

Goldman Sachs, using its professional judgment, applied the range of P/BV multiples to Hatteras' book value per share as of February 29, 2016 of $18.72, as provided by the management of Hatteras, to derive a range of implied values per share of Hatteras' common stock of $12.06 to $17.91. Goldman Sachs, using its professional judgment, applied the range of annualized dividend yields to the annualized dividend paid by Hatteras in the most recent quarter of $0.45, as provided by the management of Hatteras, to derive a range of implied values per share of Hatteras' common stock of $9.87 to $20.38.

55.     These statements in the Recommendation Statement are rendered false and/or misleading by the omissions identified in ¶53 because the information omitted is essential to shareholders' ability to properly evaluate the analysis performed by Goldman.  Indeed, benchmarking metrics are used in the valuation process to help instruct the selection of pricing multiples based on the different levels of growth, profitability, etc., among the comparable companies selected.  No two companies are identical, and benchmarking plays an important role when incorporating the differences between companies into the valuation process.  Moreover, each of the selected comparable companies used in the analysis was chosen because Goldman felt they all shared similarities to Hatteras.  Invariably, however, some types of companies will share more similarities to Hatteras than others, so information relating to Goldman's perspectives on relative comparability is vital when evaluating the multiples implied by the Company's forecasts compared to the multiples from the companies Goldman selected as part of this analysis.  For

example, although all of the companies Goldman selected are REITs, at least half of the companies selected by Goldman invest in a completely different asset type from Hatteras, have lower financial multiples than the companies truly comparable to Hatteras and therefore should not have been included in a comparable company analysis involving Hatteras.  By utilizing these non-comparable companies with lower financial multiples in its analysis, Goldman was able to depress the implied per share values resulting from the analysis and make the insufficient Offer Price look favorable to Hatteras shareholders. Critically, if Goldman had analyzed only the five most directly comparable companies which, like Hatteras, invest primarily in government guaranteed assets, the comp set would have generated a P/ BV multiple range of 0.84x to 0.90x.  Had Goldman applied this range to Hatteras' book value per share as of February 29, 2016 of $18.72, it would have derived a range of implied values of $15.71 to $16.68 per share.  Thus, applying a transaction premium of even 1% would move the Offer Price out of fairness. Indeed, had Goldman utilized a P/ BV multiple range of 0.84x to 0.90x and applied an appropriate transaction premium of 10%, the *Selected Companies Analysis* would have resulted in an implied per share range of approximately $17.28 to $18.35 – significantly above the $15.85 Offer Price.  In addition, without the individual multiples, shareholders cannot establish that several outliers, most notably PennyMac Mortgage Investment, which has a P/ BV multiple of 0.64x, are depressing the P/ BV multiple range Goldman applied in its analysis.  In sum, without the aforementioned information, shareholders' ability to understand Goldman's analysis is significantly limited, rendering them unable to make a fully-informed decision whether to tender their shares.

56.    With respect to Goldman's *Illustrative Discounted Dividend Cash Flow Analysis* of Hatteras, the Recommendation Statement fails to disclose: (a) the individual inputs and assumptions utilized by Goldman to derive the high discount rate range of 5.3% - 12.6; (b) the assumptions that

Goldman used for the selection of a dividend yield range of 9.8% to 16.1%; and (c) the basis for the range of projected book value per share of 0.57x to 0.99x as used by Goldman in its analysis.

57.     Similarly, with respect to Goldman's *Illustrative Pro Forma Combined Company Discounted Dividend Cash Flow Analysis*, the Recommendation Statement fails to disclose: (a) the individual inputs and assumptions that Goldman used for the selection of discount rates of 3.9% to 11.6%; (b) the assumptions that Goldman used for the selection of a dividend yield range of 10.0% to 15.1%; (c) the basis for the range of projected book value per share of 0.70x to 1.01x as used by Goldman in its analysis; (d) the pro forma dividends on Hatteras and Annaly for each calendar year, from the second quarter of 2016 through 2017, as used by Goldman in its analysis; and (e) the synergies considered by Goldman in its analysis, if any.

58.     The omission of this information renders the following statements in the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act:

(a)     from pages 31-32 of the Recommendation Statement:

*Illustrative Discounted Dividend Analysis of Hatteras*

Goldman Sachs performed an illustrative dividend discount model analysis on Hatteras using the Forecasts and certain publicly available information. Goldman Sachs calculated estimates of the net present value of estimated dividend streams for the period beginning with the second quarter of 2016 through 2017, as set forth in the Forecasts, and a range of illustrative terminal values, and applied discount rates ranging from 5.3% to 12.6%, reflecting estimates of Hatteras' cost of equity. The terminal values were calculated using two methodologies: (i) the required dividend yields methodology and (ii) the P/BV ratio methodology. Using a range of implied terminal values calculated by applying a 3-year dividend yield range of 9.8% to 16.1% to the projected dividends per share for calendar year 2017 according to the Forecasts, this analysis resulted in a range of implied present values per share of Hatteras' common stock of $10.92 to $18.12. Using a range of implied terminal P/BV values calculated by applying a range of 0.57x to 0.99x to Hatteras' projected book value per share of Hatteras' common stock as of December 31, 2017 as set forth in the Forecasts, this analysis resulted in a range of implied present values per share of Hatteras' common stock of $11.39 to $19.89.

*Illustrative Pro Forma Combined Company Discounted Dividend Analysis*

Goldman Sachs performed an illustrative dividend discount model analysis on Hatteras and Annaly on a pro forma basis, which we refer to as the combined company, using the Forecasts and certain public information. Goldman Sachs calculated estimates of the net present value of the estimated dividend streams of the combined company for the period beginning with the second quarter of 2016 through 2017, as set forth in the Forecasts, and assuming a dividend payout ratio of 100% per Hatteras management, and a range of illustrative terminal values for the combined company, and applied discount rates ranging from 3.9% to 11.6%, reflecting estimates of the combined company's cost of equity. The terminal values were calculated using two methodologies: (i) the required dividend yields methodology and (ii) the P/BV ratio methodology. Using a range of implied terminal values calculated by applying a 3-year dividend yield range of 10.0% to 15.1% to the combined company's estimated dividends per share for calendar year 2017, this analysis resulted in range of implied present values per share of Hatteras' common stock of $13.71 to $18.36. Using a range of implied terminal P/BV values calculated by applying a range of 0.70x to 1.01x to the combined company's estimated book value per share as of December 31, 2017, this analysis resulted in a range of implied present values per share of Hatteras' common stock of $14.14 to $18.60.

59.     The Recommendation Statement is false and/or misleading due to the omissions identified in ¶¶56, 57 for a variety of reasons. First,  it is well established that: (i) the calculation of a discount rate requires the application of a number of objective inputs and assumptions; and (ii) the ultimate discount rate selected often has the single largest impact on a resulting discounted dividend cash flow valuation. Accordingly, Hatteras shareholders must be provided with sufficient information to determine the reasonableness of Goldman's discretionary use of the inputs and assumptions used to compute the selected discount rate range. The inputs are particularly relevant here given the wide range Goldman applied, purportedly reflecting Goldman's estimates of Hatteras' and the combined company's respective costs of equity. Second, the terminal value assumptions typically have a substantial impact on the output, with even slight movements resulting in significant differences in valuation. Notably, Goldman applied a range of implied terminal P/ BV values of 0.57x to 0.99x for Hatteras - even lower than the depressed range of 0.64x to 0.96x Goldman observed and applied in its *Selected Companies*

*Analysis.*   Thus, shareholders must be provided with the assumptions that Goldman used for the selection of the respective dividend yield ranges and ranges of projected book value per share.  Third, the key inputs underlying Goldman's pro forma discounted dividend cash flow analyses are Hatteras management's and Annaly management's projected dividends and synergies – information that shareholders cannot obtain from anywhere else.  Without the aforementioned omitted information, Hatteras shareholders cannot understand and gauge the weight of the multiples derived and per share value ranges determined under these analyses and cannot evaluate for themselves whether the analyses were performed properly and, in turn, determine what weight, if any, they should place on the analyses (and Goldman's fairness opinion as a whole) when deciding whether to tender their shares.

60.   Additionally, the Recommendation Statement does not disclose material information concerning Hatteras and Annaly management's financial projections.

61.   For example, the Recommendation Statement fails to disclose the financial projections provided by Hatteras management and relied upon by Goldman for purposes of its analysis, for years 2016-2017, for the following items: (a) Other income; (b) Interest expense; (c) Net interest margin; (d) Stock-based compensation expense; (e) Dividends; (f) Net income; and (g) Book value per share.

62.   Similarly, the Recommendation Statement fails to disclose the financial projections provided by Annaly management and relied upon by Goldman for purposes of its analysis, for years 2016-2017, for the following items: (a) Other income; (b) Interest expense; (c) Net interest margin; (d) Stock-based compensation expense; (e) Dividends; (f) Net income; and (g) Book value per share.

63.   The omission of this information renders the following statements in the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act:

(a)   from page 26 of the Recommendation Statement:

25

The following table presents limited unaudited prospective financial data with respect to Hatteras that was made available to Goldman Sachs and Annaly in connection with their evaluation of the offer and the merger.

| | Quarterly | | | | | | | |
| | 2016 | | | | 2017 | | | |
| _In Thousands_ | Q1 | Q2 | Q3 | Q4 | Q1 | Q2 | Q3 | Q4 |
|---|---|---|---|---|---|---|---|---|
| Total Interest Income | $82,970 | $77,204 | $75,644 | $76,855 | $80,930 | $81,301 | $81,728 | $82,602 |
| MSR Net Income | $12,778 | $18,320 | $21,193 | $19,821 | $21,851 | $22,114 | $22,610 | $19,577 |
| Core Earnings Per Share of Common Stock (1) | $ 0.45 | $ 0.47 | $ 0.49 | $ 0.43 | $ 0.40 | $ 0.39 | $ 0.41 | $ 0.40 |

(1) Core earnings per share of common stock represents a non-GAAP measure. Hatteras defines core earnings as effective net interest margin (as defined below) plus MSR income net of amortization, management fee income and gain from mortgage loans held for sale, less adjusted operating expenses (which exclude transaction costs, amortization of intangible assets and change in representation and warranty reserve) and dividends on preferred stock. Hatteras defines effective net interest margin as net interest margin determined in accordance with GAAP, adjusted to exclude reclassification of deferred swap losses included in interest expense, to include interest rate swap monthly net settlements, to include swap equivalent gains and losses related to futures contracts, and to include TBA dollar roll income. Non-GAAP financial measures should not be considered in isolation from, or as a substitute for, financial information presented in compliance with GAAP, and non-GAAP financial measures used in the above unaudited prospective financial information may not be comparable to similarly titled amounts used by other companies or persons.

  (b)  from pages 27-28 of the Recommendation Statement:

In connection with rendering the opinion described above and performing its related financial analyses, Goldman Sachs reviewed, among other things:

* * *

- certain internal financial analyses for Hatteras prepared by its management, certain Wall Street analyst forecasts for Annaly, certain internal financial analyses and forecasts for Annaly prepared by the management of Annaly, and certain financial analyses and forecasts for Annaly, pro forma for consummation of the transaction, prepared by the management of Hatteras, in each case, as approved for Goldman Sachs' use by Hatteras, which are referred to as the "Forecasts", including certain cost synergies expected by the management of Hatteras to result from the transaction and as approved for Goldman Sachs' use by Hatteras, which are referred to as the "Synergies".

  64.  These statements in the Recommendation Statement are rendered false and/or misleading by the omissions identified in ¶¶61, 62 as this information is integral to shareholders' evaluation of the consideration being offered in the Proposed Transaction. Indeed, these financial projections provide a sneak peek into Hatteras' and Annaly's expected future performance (_i.e._, growth/profitability) and,

consequently, Hatteras' value as a standalone entity and the value of the combined company. More importantly, however, this expected performance is more reliable than similar forecasts prepared by third-party analysts and other non-insiders as it comes from members of corporate management who have their fingers on the pulse of Hatteras and Annaly. Accordingly, it is no surprise that financial projections are among the most highly sought after disclosures by shareholders in the context of corporate transactions such as this.

65.     Finally, with respect to the sale process that led to the Proposed Transaction, the *Background of the Offer and the Merger* section contained on pages 8-18 of the Recommendation Statement is materially deficient.

66.     According to the Recommendation Statement, in August 2015, representatives of a mortgage REIT with a market capitalization of comparable size to Hatteras, identified as "Company A", approached Defendant M. Hough regarding a potential merger between the two companies. In early-September 2015, the Board authorized the execution of a non-disclosure agreement ("NDA"), which was executed on September 17, 2015. In January 2016, following a temporary deterioration in market conditions, the parties terminated discussions after determining that a strategic business combination would be difficult to accomplish in light of the current market conditions and depressed stock trading levels. Although the market subsequently recovered in February 2016, the Board apparently never followed up with Company A prior to entering into the Proposed Transaction. Critically, the Recommendation Statement fails to disclose the details of the NDA, including whether the NDA contains a standstill provision that currently precludes Company A from making a topping bid.

67.     According to the Recommendation Statement, during December 2015, the special committee of the Board ("Special Committee") selected Goldman to be interviewed at the upcoming

27

January 5, 2016 Special Committee meeting regarding, among other things, its views on "potential strategic alternatives that might be available to Hatteras to enhance Hatteras' long-term stockholder value, including remaining independent and the advantages and disadvantages of a potential transaction with Company A." The Recommendation Statement fails to disclose Goldman's views on potential strategic alternatives that might be available to Hatteras to enhance Hatteras' long-term shareholder value to the Company's shareholders.

68.     Similarly, at the March 22, 2016 Board meeting, "the [Board] including the members of the [Special Committee], and its advisors, discussed the state of the mortgage REIT industry, Hatteras' earnings and book value projections and other potential strategic alternatives available to Hatteras, including remaining independent." The Recommendation Statement fails to disclose the value indications of the potential strategic alternatives available to Hatteras, including remaining independent.

69.     In addition, the Recommendation Statement states that at the April 4, 2015 Special Committee meeting, "Goldman Sachs provided a disclosure letter to the Hatteras special committee relating to certain investment banking and team member relationships with Annaly and Hatteras." However, the Recommendation Statement fails to disclose the details of the disclosure letter.

70.     The omission of this information renders the following statements in the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act:

    (a)     from page 9 of the Recommendation Statement:

In August 2015, Michael R. Hough, the Chairman of the Hatteras board of directors and Chief Executive Officer of Hatteras, was approached by the representatives of another mortgage REIT having a market capitalization of comparable size to Hatteras ("*Company A*") with an interest in exploring a potential merger between the two companies. Mr. Michael Hough subsequently briefed the Hatteras board of directors regarding these discussions and in early-September 2015, the Hatteras board of directors authorized the execution of a non-disclosure agreement with Company A, which was executed on September 17, 2015. Following the execution of the non-disclosure agreement, Hatteras

28

and Company A held very preliminary discussions regarding a potential transaction, but no terms were proposed and no confidential information was exchanged.

(b)      from page 10 of the Recommendation Statement:

During December 2015, the Hatteras special committee, together with representatives of DLA Piper and Hogan Lovells, considered the qualifications of several investment banks with significant experience advising mortgage REITs to potentially serve as the financial advisor to the Hatteras special committee. The Hatteras special committee's criteria for selecting an investment bank to act as the Hatteras special committee's financial advisor included, among other things, the absence of material conflicts of interest between the investment bank and Company A, the Hatteras external manager and its affiliates and Hatteras, including with respect to Hatteras' financing arrangements, its institutional knowledge of the commercial and residential mortgage REIT industries, its capacity to provide the functions of a full-service investment bank, including its knowledge of the trading market for mortgage-backed securities, and the investment banking team's past experience advising other companies in connection with similar transactions. Based on this criteria, the Hatteras special committee selected Goldman, Sachs & Co. ("Goldman Sachs") to be interviewed at the upcoming meeting of the Hatteras special committee on January 5, 2016. During the interview, the Hatteras special committee assessed Goldman Sachs' experience in the mortgage REIT industry, its views on the current state of the financial markets, as well as potential strategic alternatives that might be available to Hatteras to enhance Hatteras' long-term stockholder value, including remaining independent and the advantages and disadvantages of a potential transaction with Company A. After this interview and after careful consideration of other information, on January 5, 2016, the Hatteras special committee determined to engage Goldman Sachs to act as its financial advisor in connection with a potential transaction with Company A or other strategic alternatives.

(c)      from page 12 of the Recommendation Statement:

On March 21, 2016, at the quarterly board dinner, the Hatteras board of directors met to discuss the transaction and the proposal received from Annaly. Also, on March 21, 2016, Hogan Lovells provided the Hatteras special committee, at its request, a summary of the vesting provisions of the equity awards held by the Hatteras external manager and its executives. On March 22, 2016, at its regular quarterly meeting, the Hatteras board of directors met with representatives of Goldman Sachs, DLA Piper and Hogan Lovells and discussed the proposal received from Annaly. Specifically, at the March 22, 2016 meeting, the Hatteras board of directors, including the members of the Hatteras special committee, and its advisors, discussed whether such proposal (i) proposed a sufficient amount of consideration for each outstanding share of Hatteras common stock, (ii) provided the optimal mix of stock and cash consideration, (iii) included an appropriate termination fee in the case of a termination of the merger agreement under specified circumstances, and (iv) adequately addressed the treatment of ordinary

quarterly dividends. Also at the March 22, 2016 meeting, the Hatteras board of directors, including the members of the Hatteras special committee, and its advisors, discussed the state of the mortgage REIT industry, Hatteras' earnings and book value projections and other potential strategic alternatives available to Hatteras, including remaining independent.

(d)      from page 15 of the Recommendation Statement:

On April 4, 2016, the Hatteras special committee also formally confirmed the engagement of Goldman Sachs to act as its financial advisor in connection with the transaction and its consideration of other strategic alternatives. Goldman Sachs provided a disclosure letter to the Hatteras special committee relating to certain investment banking and team member relationships with Annaly and Hatteras, and after deliberation with representatives of Hogan Lovells, the Hatteras special committee determined that such relationships would not impact Goldman Sachs' ability to provide financial advice to the Hatteras special committee in connection with the proposed transaction or the Hatteras special committee's review of other strategic alternatives. On April 5, 2016, the Hatteras special committee executed an engagement letter to formally engage Goldman Sachs as financial advisor to the Hatteras special committee in connection with the transaction and the Hatteras special committee's consideration of other strategic alternatives.

71.     The Recommendation Statement is false and/or misleading due to the omitted information identified in ¶¶66-69 because it gives shareholders a materially incomplete and distorted picture of the sales process underlying the Proposed Transaction, the various alternatives available to (and considered by) defendants other than the Proposed Transaction, and the efforts taken (or not taken) to ensure that no conflicts of interest tainted the negotiation process, thus rendering it unfair to Plaintiff and the other members of the Class.  Without this omitted information, Hatteras shareholders cannot make a fully-informed decision whether to tender their shares.

72.     Defendants' failure to provide Hatteras shareholders with the foregoing material information constitutes a violation of Sections 14(e) and 20(a) of the Exchange Act.  The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Recommendation Statement.  Absent disclosure

of the foregoing material information prior to the expiration of the Offer, Plaintiff and the other members of the Class will be unable to make a fully-informed decision whether to tender their shares and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

73.     Unless enjoined by the Court, the defendants may consummate the Proposed Transaction, to the irreparable harm of Plaintiff and Hatteras' other public shareholders.

74.     Plaintiff is immediately threatened by the wrongs complained of herein, and lacks an adequate remedy at law.

## CLAIMS FOR RELIEF

### COUNT I

**Class Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act**

75.     Plaintiff repeats all previous allegations as if set forth in full.

76.     Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Offer commenced in conjunction with the Proposed Transaction.

77.     Defendants knew that Plaintiff would rely upon their statements in the Recommendation Statement in determining whether to tender their shares pursuant to the Offer commenced in conjunction with the Proposed Transaction.

78.     As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an

informed decision in deciding whether or not to tender his shares.

## COUNT II

### Class Claims Against the Individual Defendants for
### Violation of Section 20(a) of the Exchange Act

79.     Plaintiff repeats all previous allegations as if set forth in full.

80.     The Individual Defendants acted as controlling persons of Hatteras within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of Hatteras and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

81.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

82.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Individual Defendants prior to their approval of the Proposed Transaction.  The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

83.     In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.   The Recommendation Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

84.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

85.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e), by their acts and omissions as alleged herein.   By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.   As a direct and proximate result of the Individual Defendants' conduct, Plaintiff will be irreparably harmed.

86.     Plaintiff has no adequate remedy at law.   Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' conduct threatens to inflict.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of the Class, and against defendants, as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.     Declaring that defendants violated Section 14(e) of the Exchange Act;

C.     Declaring that the Individual Defendants violated Section 20(a) of the Exchange Act;

D.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, until such time that the defendants disclose the material information which has been omitted from the Recommendation Statement;

E.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

F.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees and expenses; and

G.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: May 24, 2016

/s/
Thomas J. Minton – No. 03370
Goldman & Minton, P.C.
1500 Union Avenue, Suite 2300
Baltimore, MD 21211
Ph (410) 783-7575
Fax (410) 783-1711
tminton@charmcitylegal.com

WEISSLAW LLP
Richard A. Acocelli
Michael A. Rogovin
Kelly C. Keenan
1500 Broadway, 16th Fl.
New York, New York 10036
Tel:    (212) 682-3025
Fax:    (212) 682-3010

*Attorneys for Plaintiff*

34

## CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

The undersigned certifies as follows:

1.      The undersigned has reviewed the complaint filed against Hatteras Financial Corp. ("Hatteras") and others and would authorize the filing thereof, if necessary.

2.      The undersigned did not purchase the security that is the subject of this action at the direction of counsel or in order to participate in this lawsuit.

3.      The undersigned is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.      The undersigned's purchases and sales of Hatteras common stock during the class period are reflected in the attached Addendum.

5.      The undersigned has not sought to serve or served as a class representative under the federal securities laws in the last three years, other than listed below (if any):

In re PVR L.P. Securities Litigation, Civil Action No. 2:13-cv-06829-HB (E.D.P.A.)

In re QR Energy LP Unitholder Litigation, Lead Case No. 4:14-cv-02195 (S.D.T.X.)

6.      The undersigned will not accept any payment for serving as a representative party beyond the undersigned's pro rata share of any recovery, except as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I hereby certify, under penalty of perjury, that the foregoing is true and correct.

DATED:      May __, 2016
                05/12/2016

_____
Stephen Bushansky

# Signature Certificate

🔒 Document Reference: MS6LT2JRAKM66IV2SNCH76



RightSignature
Easy Online Document Signing



**Stephen Bushansky**
Party ID: GV58GXJBZ2VNHB6Y497W6Y
IP Address: 173.77.132.122
VERIFIED EMAIL: velvel69@aol.com

Electronic Signature:



Multi-Factor
**Digital Fingerprint Checksum**    86c11a2a5444f1a3c3f3aff17cdb680b21b6e01b

| Timestamp | Audit |
|---|---|
| 2016-05-12 12:03:43 -0700 | All parties have signed document. Signed copies sent to: Stephen Bushansky and Joshua Rubin. |
| 2016-05-12 12:03:43 -0700 | Document signed by Stephen Bushansky (velvel69@aol.com) with drawn signature. - 173.77.132.122 |
| 2016-05-12 12:02:37 -0700 | Document viewed by Stephen Bushansky (velvel69@aol.com). - 173.77.132.122 |
| 2016-05-12 12:02:13 -0700 | Document created by Joshua Rubin (jrubin@weisslawllp.com). - 38.96.186.66 |



This signature page provides a record of the online activity executing this contract.

**Page 1 of 1**

## ADDENDUM A
## TO CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS


As of April 10, 2016, Stephen Bushansky held 300 shares of the common stock of Hatteras Financial Corp., and has held those shares continuously.